Jorge Alejandro Rojas
Rojas.jorge96@gmail.com
Plaintiff in Pro Se
557 Cambridge Way
Bolingbrook, IL 60440
424-219-1582



FILED
CLERK, U.S. DISTRICT COURT

10/8/23

CENTRAL DISTRICT OF CALIFORNIA
BY: \_\_\_\_\_mz\_\_\_\_\_ DEPUTY

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

JORGE ALEJANDRO ROJAS,

        Plaintiff,

v.

OWNER OF TELEPHONE NUMBER 818-445-5322, AMERICAN HOME IMPROVEMENT INC, and MOSHE BEN NISSAN,

        Defendants.

Case No. 2:23-cv-07939-PA-JC

Judge Percy Anderson
Magistrate Judge Jacqueline Chooljian

**AMENDED COMPLAINT FOR: VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227.**

    Plaintiff, Jorge Alejandro Rojas, files this Amended Complaint[1] under the Telephone Consumer Protection Act, 47 U.S.C. § 227, and its implementing regulations, against Defendants Owner of Telephone Number 818-445-5322, American Home Improvement Inc ("AHI"), and Moshe Ben Nissan ("Nissan"), collectively, "Defendants", and alleges based on personal knowledge and information and belief, as follows:

## INTRODUCTION

1. One thing is for certain, this telemarketer is good, very sneaky, and smart. But these characteristics are not an affirmative defense to violating federal law, the Telephone

---

[1] Plaintiff amends the Complaint (Dkt. 1) pursuant to Fed. R. Civ. P. 15(a)(1)(A) – no party has yet been served. Plaintiff joins American Home Improvement Inc, and Moshe Ben Nissan as new parties to this action.

Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. Plaintiff commenced this action solely against a John Doe Defendant (Dkt. 1), but since the filing of the Complaint, Plaintiff has received additional telephone calls which have allowed him to identify at least some of the responsible entities for the illegal TCPA conduct. Plaintiff files this Amended Complaint to reflect this entity as a new party, but leaves in the John Doe entity as he intends to seek discovery to identify the operator of that telephone number, to the extent that it is a different entity. The John Doe Defendant is being fictitiously named here because their true name are not yet known. Plaintiff has reasonably inquired as to their identity and has been unable to identify the true indispensable party of that telephone number. The Court's assistance, via subpoena power, will be requested to help facilitate the proper naming and service of the allegedly responsible entity.

2. As the Supreme Court has explained, Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019. The States likewise field a constant barrage of complaints. For nearly 30 years, representatives in Congress have been fighting back. As relevant here, the Telephone Consumer Protection Act of 1991, known as the "TCPA", generally prohibits robocalls to cell phones and home phones. *See Barr v. Am. Ass'n of Political Consultants,* 140 S. Ct. 2335, 2343 (2020).

3. Plaintiff brings this action against Defendants for violations of the TCPA, 47 U.S.C. § 227.

4. This case involves a campaign by Defendants to obtain business via themselves or affiliates making telemarketing calls for home remodeling services from individuals who have not consented to getting those calls.

## **JURISDICTION AND VENUE**

5. This Court has subject-matter jurisdiction over the TCPA claims in this action under 28 U.S.C. § 1331.

6. This Court has personal jurisdiction over Defendants as they regularly and systemically conduct business in the state of California. Specifically, the Defendant conducts significant business in the State. The wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District.

7. Plaintiff previously lived in Torrance, California, and his telephone number area code is still a Torrance, CA area code. While Plaintiff does not live in this district anymore, the facts to date support that Defendant are operating within this district.

8. The calls made herein were made concerning a property located within this District.

9. The named Defendants which have been identified are located within this District because the corporate entity is incorporated with the California Secretary of State and lists a principal place of business located within Los Angeles county and the individual officer lists the same address.

10. Venue is proper under 28 U.S.C. § 1391(b)(2).

## PARTIES

11. Plaintiff Jorge Alejandro Rojas is a natural person residing in Bolingbrook, IL 60440, and is a citizen of the State of Illinois.

12. Defendant Owner of Telephone Number 818-445-5322 is a fictitious entity placeholder, operating the telephone number and can be a person or other entity, and will be substituted following discovery.

13. Defendant American Home Improvement Inc ("AHI") is a California entity, with a principal address of 20335 Ventura Blvd, #422, Woodland Hills, CA 91364, and a registered agent of Moshe Ben Nissan located at the same.

14. Defendant Moshe Ben Nissan is the CEO, Secretary, and CFO, of Defendant AHI, and is located at the same address.

15. Defendants are a person as defined by 47 U.S.C. § 153(39).

16. Defendants acted through their agents, affiliates, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and/or insurers.

## STATUTORY BACKGROUND

17. In 1991, Congress enacted the TCPA to regulate the explosive growth of the automated calling industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

18. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call." *See* 47 U.S.C. § 227(b)(1)(A)(iii).

19. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live calls, and such calls can be costly and inconvenient.

20. The TCPA provides a private cause of action to persons who receive such automated or pre-recorded calls. *See* 47 U.S.C. § 227(b)(3).

21. In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. It ordered that:

[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously

to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]" *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

22. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

23. A listing on the Registry "must be honored indefinitely, or until the registration is canceled by the consumer or the telephone number is removed by the database administrator." *Id.*

24. The TCPA's implementing regulations require that the caller provide the called party the name of the individual caller, the name of the person or entity on whose behalf the call is made, and a telephone or address where the person may be reached. 47 C.F.R. § 64.1200(b); 47 C.F.R § 64.1200(d)(4).

25. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers whose numbers are on the Registry and provides a private right of action against any entity that makes those calls, or "on whose behalf" such calls are promoted. 47 U.S.C. § 227(c)(5); 47 C.F.R § 64.1200(c)(2).

26. The TCPA's definition of telephone solicitation applies to the "initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 U.S.C. § 227(a)(4).

27. The TCPA's definition of unsolicited advertisement applies to "means any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." 47 U.S.C. § 227(a)(5).

28. The restriction against using an ATDS or prerecorded message to call a number applies to any non-emergency, non-consensual call, regardless of its purpose, regardless of whether they are telephone solicitations (as in survey or political calls), and regardless of whether the individual called in on any do-not-call registry. *See Perrong v. Victory Phones LLC,* No. CV 20-5317, 2021 WL 3007258, at *6 *(*E.D. Pa. July 15, 2021*)*. This is clearly indicated by the fact that the TCPA prohibits "any person" from initiating "any call" using an ATDS. *See* id.

29. On May 9, 2013, the FCC determined that this was not a basis for avoiding liability within a Declaratory Ruling that held that sellers may not avoid liability by outsourcing telemarketing:

    [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside of the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain relief. As the FTC noted, because "[s]ellers may have thousands of "independent" marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

    *In re Joint Petition Filed by DISH Network*, 28 FCC Rcd. 6574, 6588 (¶ 37) (2013) ("May 2013 FCC Ruling") (internal citations omitted).

30. The May 2013 FCC ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal actual agency and immediate direction and control over third parties who place a telemarketing call. *Id*. At 6587 n. 107.

31. The evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." Id. At 6593.

32. The May 2013 FCC Ruling held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. *Id*. at 6586 (¶ 34).

33. The May 2013 FCC Ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing call. *Id*. at 6587 n.107.

34. The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *See In re Rules & Regulations Implementing the TCPA*, 10 FCC Rcd. 12391, 12397 (1995).

35. Under the TCPA, an individual may be personally liable for the acts alleged in the Complaint pursuant to 47 U.S.C. § 217 of the TCPA, which reads, inter alia:

"[T]he act, omission, or failure of any officer, agent, or other person acting for or employed by any common carrier or user, acting within the scope of his employment, shall in every case be also deemed to be the act, omission, or failure of such carrier or user *as well as of that person*." (*emphasis* added)

36. When considering individual officer liability under the TCPA, other Courts have agreed that a corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *See, e.g., Jackson Five Star Catering, Inc. v. Beason*, 2013 U.S. Dist. LEXIS 159985, *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA "where they 'had direct, personal participation in or personally authorized the conduct found to have violated the statute.'"); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415-16

(D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

37. Individual Defendants directed and oversaw the telemarketing activity in progress, including selecting any third-party affiliate to make the call, exercised control over those affiliates, and any other employees who made the telephone calls.

38. Employees can be held liable in TCPA actions for unlawful conduct.

39. The individual defendant in this case personally participated in the actions complained of by: (a) personally selecting the phone numbers that would be called; (b) approving the scripting that would be used on the calls; (c) selecting and managing the dialing equipment or supplier of the same used to make the calls; and (d) personally paying for the calls.

## FACTUAL ALLEGATIONS

40. At all times relevant hereto, Plaintiff maintained and used a residential cellular telephone line, with phone number (424) XXX-1582.
41. The phone number is not associated with a business and is used by Plaintiff solely.
42. Plaintiff is the account holder and customary user of his phone number.
43. Plaintiff registered his phone number on the Federal Do Not Call Registry on or around January 18, 2008.
44. Plaintiff registered his phone number on the Do Not Call list to obtain solitude from invasive and harassing telemarketing calls. The call prevented Plaintiff from using his phone for legitimate purposes, caused a usage in battery life, distraction from other activities, and more.
45. Defendants market home improvement, construction, and remodeling services, for itself, or for companies that contract with it to make such calls.
46. **Call 1.** On or about August 14, 2023, at 4:56 PM Pacific time, Plaintiff received a telephone call from Defendants, or an agent acting on their behalf, from a telephone number that displayed as 818-960-6197.
47. Plaintiff's telephone flagged this number as "Maybe: Junk."

48. Online websites which flag robocallers list this number as a potential robocaller, https://www.nomorobo.com/lookup/818-960-6197, https://lookup.robokiller.com/p/818-960-6197, https://whocallsme.com/Phone-Number.aspx/8189606197.

49. When Plaintiff answered the telephone, he had to state a greeting several times, prior to hearing a music like song tone play, prior to being connected to a female with a foreign accent, who identified herself as "Nicole" who in sum and substance stated that she was looking for homeowners interested in construction projects being completed at their homes.

50. Nicole scheduled an appointment at a Torrance, California residence for the Thursday of the following week in the afternoon.

51. The scheduled appointment date was August 24, 2023.

52. Nicole stated she was with "Home Remodeling" company, and did not substantively identify the name of the company she was working on behalf of.

53. Nicole stated that Plaintiff would receive a call the day prior to the appointment confirming the visit.

54. On August 23, 2023, the day before the scheduled appointment, Plaintiff received a call from a "David" from telephone number 818-445-5322.

55. The August 23, 2023, telephone call displayed on Plaintiff's caller ID as "Ame Improvement."

56. David stated during the telephone call that he was calling to confirm the appointment for the next day and provided the same telephone number as a call back.

57. Since August 23, 2023, Plaintiff has been able to reach David at the 818-445-5322 telephone number to verify that it is in fact a "legitimate" number displayed on his caller ID.

58. David has failed to substantively identify the name of the company that he is working for, necessitating a subpoena which Plaintiff will seek following the docketing of this case.

59. **Call 2.** On or about September 20, 2023, at 3:37 PM Pacific time, Plaintiff received a telephone call from Defendants, or an agent acting on their behalf, from a telephone number that displayed as 626-702-3110.
60. An online search of this telephone number identifies others getting similar calls. https://lookup.robokiller.com/p/626-702-3110.
61. Plaintiff's telephone flagged this number as "Scam Likely."
62. When Plaintiff answered the telephone, he heard a woman who identified herself as "Nikki" who stated she was with "Energy Efficient and Home Remodeling" located in Torrance, selling windows.
63. Nikki provided a call back number of 818-445-5322.
64. Plaintiff asked Nikki several times for the name of the company she was calling on behalf of and/or a website where he could find their information, and Nikki would not provide it over the telephone.
65. Nikki stated during the telephone call that "we haven't spoken before."
66. Nikki stated that the reason she was calling from a different number than the call back number she provided was that it was being dialed from the office line.
67. Plaintiff has tried to call back the 626-702-3110 telephone number, but it fails to connect.
68. The fact the telephone number called from fails to connect is indicative that an ATDS system was used.
69. Plaintiff alleges Defendants make telephone calls en masse, or hires someone else to do them, without prior consent, in order to identify individuals interested in home construction projects.
70. Plaintiff alleges the conduct herein was committed knowingly and/or willfully, for reasons including the failure to properly identify the proper entity making the telephone calls.
71. The telephone number 818-445-5322 is a T-Mobile telephone number. https://freecarrierlookup.com.

72. A Google Search of the 818-445-5322 telephone number reveals results for "Solis Construction, Inc's" Better Business Bureau page, https://www.bbb.org/us/ca/murrieta/profile/general-contractor/sollis-construction-inc-1066-13196307, as well as an O&J Advertising, https://www.google.com/url?sa=t&rct=j&q=&esrc=s&source=web&cd=&ved=2ahUKEwjkz5SLoZKBAxX1MDQIHSKeDk8QFnoECA4QAQ&url=https%3A%2F%2Fwww.mapquest.com%2Fus%2Fcalifornia%2Foj-advertising-468912225&usg=AOvVaw1CzcohgjbN4Gck1aPk1rJC&opi=89978449.

73. Plaintiff has found multiple companies with the name "Solis Construction" within California, but the one with the name of Solis Construction Inc has been suspended since approximately 2010.

74. O & J Advertising, Inc, is an active California company.

75. The inbound call above was made utilizing an Automatic Telephone Dialing System ("ATDS") without Plaintiff's prior express written consent.

76. The inbound call above was made utilizing a pre-recorded or artificial voice because of the use of the pre-recorded music/song like tone.

77. The telephone call identified above was made for the solicitation of the services of home improvement/construction services.

78. **Call 3.** On or about September 28, 2023, at 10:53 AM Pacific time, Plaintiff received a telephone call from Defendants, or an affiliate acting on its behalf, from a telephone number of 818-659-9447.

79. When Plaintiff answered the telephone, he spoke with a "Mary" who stated that they have never spoken before, but that they were calling regarding window installations for homes. Mary provided a call back number of 818-445-5322.

80. Plaintiff alleges this call was made using an ATDS given the fact the number dialing from/displayed on Plaintiff's caller ID is different than the call back number, as well as the fact that Mary stated that they had never spoken before, but Plaintiff indeed had spoken with someone who has provided the same call back number.

81. Plaintiff informed Mary to stop calling him.
82. **Call 4.** On or about October 1, 2023, at 3:03 PM Pacific time, Plaintiff received a telephone call from Defendants, or an affiliate acting on its behalf, from a telephone number of 909-365-2101.
83. When Plaintiff answered the telephone, he had to state a greeting multiple times, and experienced a longer than natural pause prior to being connected to a female.
84. The female stated she was the one that called last week, about the windows, and provided the same call back number.
85. Plaintiff asked the individual if she did not take down the do not call request from the prior call, but the female stated to the effect of she didn't want Plaintiff to miss out on the sales opportunity.
86. Plaintiff reaffirmed his do not call request.
87. **Call 5.** On or about October 3, 2023, at 5:10 PM Pacific time, Plaintiff received a telephone call from Defendants, or an affiliate acting on its behalf, from a telephone number of 323-927-7990.
88. When Plaintiff answered Call 5, he spoke to a "Jen" who stated she was with "American Home Improvement."
89. Jen provided a website of https://ahibuilders.com.
90. Jen stated that she was following up concerning an appointment that never took place, and stated that the appointment had been scheduled for August 24, 2023, at about 3pm.
91. Jen stated that while she didn't know a "David" (the purported name of the individual who called previously with the call back number subject of this action), that he might "work in another department."
92. Plaintiff alleges that all the telephone calls alleged in this action were made for the benefit of AHI and its officer.
93. Plaintiff sent an e-mail to info@ahibuilders.com on October 8, 2023, requesting a copy of Defendants do not call policy, and to be placed on its do not call list.

94. The website provided by Jen, https://ahibuilders.com, lists the same address listed with the California Secretary of State for AHI.
95. Plaintiff believes that AHI may contract with one or more other companies to generate leads and make telephone calls.
96. Although Plaintiff has identified at least some of the individuals or entities responsible for the conduct alleged in this action, he leaves the placeholder John Doe Defendant, as he intends to seek discovery shortly as to the identity of the subscriber's information.
97. Plaintiff believes that to the extent that the owner of the call back number provided is different than the currently sued Defendants, that entity was making telephone calls or generating leads for the current Defendants, and is also responsible for at least some of the conduct alleged herein.
98. Although Defendants were given – several, verbal, do not call requests, Defendants ignored those requests and nevertheless continued calling Plaintiff.
99. Despite the calls being made for the benefit of AHI, the calls never included the required identification information required under the TCPA rules.
100. The conduct alleged in this action was made willful and knowingly, including for example failing to fully disclose identity during the first interaction with the caller, the use of masked and spoofed telephone numbers, and ambiguous names.
101. The TCPA requires telemarketers to provide training to its employees, contractors, etc., and Defendants have failed to properly train the same.
102. Courts have relied in part on the "the general tort rule that 'corporate officers or agents are personally liable for those torts which they personally commit, or which they inspire or participate in, even though performed in the name of an artificial body.'" *Universal Elections*, 787 F. Supp. 2d at 416 (internal citations omitted); *see also Am. Blastfax, Inc.*, 164 F. Supp. 2d at 898.
103. The individual Defendants in this action engaged in the operation of the telemarketing scheme.

104. Defendants' phone calls utilized an Automatic Telephone Dialing System (ATDS) and/or a pre-recorded voice without obtaining Plaintiff's prior express written consent.

105. Plaintiff at this time does not seek recovery as to an ATDS claim for call 5.

106. Plaintiff is ignorant of the exact process by which the system(s) used by the Defendants operate other than drawing the reasonable inference and alleging that it stores or produces telephone numbers randomly or possibly sequentially based on the facts ascertainable from the call he received, as outlined above. Indeed, as at least one district court explained, "The newly clarified definition of an ATDS is more relevant to a summary judgment motion than at the pleading stage." *Gross v. GG Homes, Inc.*, No. 3:21-cv-00271-DMS-BGS, 2021 WL 2863623, at *7 (S.D. Cal. July 8, 2021); accord *Miles v. Medicredit, Inc.*, No. 4:20-cv-01186-JAR, 2021 WL 2949565 (E.D. Mo. July 14, 2021).

107. Plaintiff did not have a prior business relationship with Defendants.

108. Defendants did not have any consent to call Plaintiff.

109. Defendants are not an organization exempt from the TCPA.

110. Defendants' calls to Plaintiff were a "telephone solicitation."

111. Defendants' calls to Plaintiff were an "unsolicited advertisement."

112. Upon information and belief, Plaintiff received additional calls from Defendants and their affiliates not included above.

113. Plaintiff alleges that Defendants train their affiliates to avoid divulging too much information to leads and customers to evade TCPA liability.

114. The impersonal and generic nature of the calls demonstrate Defendants utilized an ATDS and/or a pre-recorded voice in making the call.

115. In total, Defendants and/or their affiliates placed at least FIVE (5) telephone solicitation calls to Plaintiff.

116. As a result of the foregoing, Plaintiff experienced frustration, annoyance, irritation, and a sense that his privacy has been invaded by Defendants.

117. Defendants have a pattern and practice of failing to comply with the TCPA.

118. The foregoing acts and omissions were in violation of the TCPA.

119. Defendants are engaging in violations of the TCPA to get business.

120. The TCPA prohibits placing calls using an automatic telephone dialing system or automatically generated or prerecorded voice to a cellular telephone except where the calling has the prior express consent of the called party to make such calls or where the call is made for emergency purposes. 47 U.S.C. § 227(b)(1)(A)(iii).

121. As a result of Defendants' knowing and/or willful violations of 47 U.S.C. § 227, Plaintiff is entitled to treble damages of up to $1,500.00 for each call made in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(C).

122. The acts and omissions of Defendants constitute knowing and/or willful violations of the TCPA, including but not limited to each of the above-cited provisions of 47 U.S.C. § 227.

123. Plaintiff seeks injunctive relief prohibiting such conduct violating the TCPA by Defendants in the future.

124. Plaintiff is also entitled to an award of costs.

125. Defendants' calls were not made for "emergency purposes."

126. Defendants' calls to Plaintiff were made without any prior express written consent.

127. Defendants contacted Plaintiff even though Plaintiff was on the Do Not Call Registry.

128. Defendants' acts as described above were done with malicious, intentional, willful, reckless, wanton, and negligent disregard for Plaintiff's rights under the law and with the purpose of harassing Plaintiff.

129. The acts and/or omissions of Defendants were done unfairly, unlawfully, intentionally, deceptively, and fraudulently and absent bona fide error, lawful right, legal defense, legal justification, or legal excuse.

130. As a result of the above violations of the TCPA, Plaintiff has suffered losses and damages as set forth above entitling Plaintiff to an award of statutory, actual and trebles damages.

131. Plaintiff, in discovery will better identify how many telephone calls were made by Defendants and or their agents or affiliates, and requests leave to amend the complaint after identifying the instance count.

### COUNT 1. Violation of the TCPA's Automated Telemarketing Call Provisions, 47 U.S.C. § 227(b)(1)

132. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

133. Defendants or one of their affiliates or vendors called Plaintiff's cellular telephone using an "automatic telephone dialing system" and/or a pre-recorded voice as defined by the TCPA on at least four (4) occasions in violation of 47 U.S.C. § 227(b)(1), without Plaintiff's prior express written consent.

134. Plaintiff was statutorily damaged at least four (4) occasions under 47 U.S.C. § 227(b)(3)(B) by the Defendants by the telephone calls described above, in the amount of $500.00 for each.

135. Plaintiff was further statutorily damaged because Defendant willfully or knowingly violated this subsection of the TCPA. Plaintiff requests that the court treble the damage amount as permitted under 47 U.S.C. § 227(b)(3)(C) for these willful or knowing violations.

WHEREFORE, Plaintiff respectfully requests that judgment be entered in his favor and against, Defendants, jointly and severally, in an amount of $6,000.00 plus costs and any other remedy deemed appropriate.

### COUNT 2.
### Violation concerning Do Not Call List and TCPA Implementing Regulations, 47 U.S.C. 227(c)

136. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

137. By placing at least five (5) telemarketing calls to the Plaintiff, whose number is on the Do-Not-Call registry, failing to have a written Do-Not-Call policy, failing to maintain the Plaintiff on their Do-Not-Call list, failing to provide proper training to their employees, failing to properly identify themselves, Defendants, jointly and severally, violated 47 U.S.C. § 227(c)(5) by violating the implementing regulations codified in 47 C.F.R. § 64.1200(c) and (d).

138. Defendants called Plaintiff at least five (5) times notwithstanding him being on the Do Not Call list for several years.

139. Defendants called Plaintiff despite making several, verbal, do not call requests.

140. Defendants ignored Plaintiff's do not call requests, and even admitted that they didn't record it because they didn't want him to miss out on sales.

141. Defendants did not identify themselves properly to the Plaintiff during the telephone calls. It was only until the final call that Plaintiff was able to identify the true Defendants.

142. The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute violations of the TCPA, 47 U.S.C. § 227(c), codified at 47 C.F.R. § 64.1200, by, inter alia, refusing to scrub against the National Do-Not-Call registry, refusing to maintain Plaintiff's number on an internal Do-Not-Call list, failing to properly identify themselves, and failing to have a Do-Not-Call policy.

143. The TCPA's implementing regulations require that the caller provide the called party the name of the individual caller, the name of the person or entity on whose behalf the call is made, and a telephone or address where the person may be reached. 47 C.F.R. § 64.1200(b); 47 C.F.R § 64.1200(d)(4).

144. Defendant failed to properly identify itself during the telephone call – leading to the necessity for a John Doe action.

145. As a result of Defendants' and/or their affiliates, agents, and/or other persons or entities acting on their behalf's violations of the TCPA, 47 U.S.C. § 227(c), Plaintiff is entitled to an award of $500 in damages for each and every call and violation made to his telephone number in violation of the TCPA's implementing regulations codified at 47 C.F.R. § 64.1200, pursuant to 47 U.S.C. § 227(c)(5)(B).

146. Plaintiff is also entitled to and does seek injunctive relief prohibiting Defendants and/or their affiliates, agents, and/or other persons or entities acting on their behalf from violating the TCPA, 47 U.S.C. § 227(c), by making calls in violation of any of the TCPA's implementing regulations in the future.

147. The Defendants' violations were knowing and/or willful. Accordingly, the Plaintiff seeks up to treble damages of the $500 per violation award, as provided in 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(c)(5).

WHEREFORE, Plaintiff respectfully requests that judgment be entered in his favor and against, Defendants, jointly and or severally, in an amount of $7,500.00 plus costs and any other remedy deemed appropriate.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that judgment be entered in favor of him and against Defendants, jointly and severally, in an amount to be more fully determined at trial, but at least $13,500.00 as permitted by statute, as follows:

A. All actual damages Plaintiff suffered,

B. Statutory damages of $500.00 per call for every violation of 47 U.S.C. § 227(b),

C. Treble damages of $1,500.00 per call for each violation determined to be willful and/or knowingly pursuant to 47 U.S.C. § 227(b)(3)(C) and 47 U.S.C. § 227(c)(5),

D. Statutory damages of $500.00 per call for every violation of 47 U.S.C. § 227(c),

E. Treble statutory damages of $1,500.00 per violation of the TCPA's implementing regulations,

F. All reasonable witness fees, court costs, pre-judgment and post-judgment interest, and other litigation costs incurred by Plaintiff,

G. Injunctive relief prohibiting such violations of the TCPA by Defendants in the future,

H. Leave to amend this Complaint to conform to the evidence presented at trial,

I. Any other relief this Court deems proper.

Respectfully submitted,

Dated: October 8, 2023

JORGE ALEJANDRO ROJAS
Rojas.jorge96@gmail.com
Plaintiff in Pro Se
557 Cambridge Way
Bolingbrook, IL 60440
(424) 219-1582

## CERTIFICATE OF SERVICE

The undersigned certifies that this document will be served on the newly joined parties via service of process via summons or waiver of service, and will not be served on the existing party as they have yet to be identified.

Dated: October 8, 2023

JORGE ALEJANDRO ROJAS